UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ASTRID M. HENSEL and STEVEN L. HENSEL, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:15-CV-036 JD ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

In this lawsuit, Plaintiff Astrid M. Hensel brings a negligence claim against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346. She asserts that United States Postal Service employee Perry Spahr struck her while driving negligently through a post office parking lot. Hensel's husband brings a derivative claim for loss of consortium. The parties tried the Plaintiffs' claims in a bench trial before the Court on November 22, 2016. For the reasons that follow, the Court enters judgment for the United States.

### TRIAL EVIDENCE

The parties do not dispute that on August 28, 2013, sometime between 3:45 p.m. and 4:00 p.m., a vehicle driven by Perry Spahr struck Astrid Hensel as she was walking across a post office parking lot. They also agree that Spahr was driving his vehicle in the regular course of his employment as a rural carrier with the United States Postal Service. The parking lot where the accident occurred consists "of a one-way drive lane down the center, approximately 21 feet [wide], with angle parking on both the east [i.e. left] and west [i.e. right] sides of the parking lot." [DE 33 at 5]. The post office borders the left side of the parking lot, so customers who

park on the right side walk across the drive lane to access to it.  At trial, the Plaintiffs contended that Spahr was not exercising due care when his vehicle struck Hensel.  The Defendant disputed that allegation and further argued that Hensel's own negligence bars the Plaintiffs' claims.

*Testimony of Perry Spahr*

Several witnesses testified at trial.  First, Spahr testified that he is a delivery driver for the United States Postal Service.  At 3:50 p.m. on August 28, 2013, after completing his delivery route for the day, he was driving back to the post office to drop off mail for collection.  He headed southwest on Wayne Street, arrived at the intersection of Wayne Street and First Avenue and came to a stop.  He then turned left onto First Avenue and made an immediate right turn into the post office parking lot.  As he was beginning to turn right, he looked to his right and noticed a man getting into a car.  He did not see any other pedestrians, but would have been able to see anyone in the drive lane.  There were also some other cars parked on the right side of the parking lot.  Once Spahr entered the post office parking lot, he traveled down the middle of the drive lane at about seven to eight miles per hour with his foot covering the brake.  After looking to his right, Spahr looked to his left, where he observed a car in the second space to the left with its backup lights on.  He was concerned that the car could pull out in front of him, so he slowed down.  After about two seconds, he returned his attention straight ahead and saw Hensel directly in front of his right bumper.  He stepped on the brakes and stopped almost immediately, but was unable to avoid hitting her.  He did not know where she came from and did not recall what direction she was facing.

*Testimony of Astrid Hensel*

Astrid Hensel testified that she arrived at the post office on August 28, 2013 to mail a package. After entering the parking lot, she parked in the third diagonal space to the right.[1] The middle of that space is about forty-three feet from where the drive lane intersects with First Street. She got out of her minivan and walked around the back of it to the passenger side to get her package. She does not recall if there was a vehicle parked on that side of her van. After retrieving her package, she walked to the end of her vehicle, which was about forty feet from First Street. She did not look behind her. Rather, she looked left and right and saw no cars. She then began walking across the parking lot at a normal pace at a northeast diagonal angle. From the way she was walking, she could see if a car was turning into the drive lane off of First Street at all times. She does not recall if there were any cars on the side of the parking lot closest to the post office, and does not recall seeing any cars with backup lights on. She was in the middle of the parking lot, about ten feet into the drive lane, when a car came upon her "all of a sudden." Tr. 162. She turned to her left to get out of the way, but could not avoid being hit and was struck in the right knee by the car's right front bumper. In light of the trajectory she was walking, she would have been less than forty-three feet from the post office entrance when she was hit. After the collision, Spahr got out of his car and told her that he did not see her walking across the street because he was "paying attention to some other people." Tr. 117.[2] As a result of the accident, Hensel suffered injuries to her right leg and knee.

---

[1] Hensel's husband also testified. He corroborated the location of Hensel's van, though his testimony otherwise primarily concerned damages. The parties also offered considerable other evidence regarding the extent of Hensel's injuries and the harm she and her husband suffered as a result of the accident. However, the Court does not reach the issue of damages because it finds that her recovery is barred.

[2] The Court notes that this account differs from Spahr's. During his direct examination, Spahr testified that he did not make this statement. Tr. 56 ("Q: Okay. Did you say, I wasn't looking? A: I did not say anything.").

*Testimony of Kristi Williams*

Kristi Williams was the only witness to the accident. She testified that she arrived at the post office parking lot on the afternoon of August 28, 2013. She parked in the third spot to the left. A car was parked beside her in the second spot to the left. She went into the post office and got her mail. When she returned, the parking lot was busy, so she decided to look at her mail and wait for traffic to dissipate before she left. Her vehicle was in park and did not have its backup lights on.

Through her rearview mirror she observed Hensel pull into the post office and park in the fourth spot to the right. A large cargo van with "closed-in" windows was parked closer to First Street, which would have blocked Hensel from the view of a driver pulling into the drive lane. Tr. 207-08. After parking, Hensel did not walk around her vehicle to the passenger side. Rather, she exited her van in a hurry and started to walk quickly, following the angle of her vehicle. She looked back over her right shoulder while continuing to walk forward, emerging between two large vehicles into the drive lane. She was then struck by a car around its passenger-side headlight. After the accident, Williams met with Marshal Spitler and gave a description of the events she observed, which was consistent with her trial testimony.

*Testimony of Marshal Spitler*

Marshal Spitler is the police officer who investigated the accident. He testified that he responded to the scene at about 3:58 p.m. on August 28, 2013, when a pedestrian flagged him down as he was driving. When he arrived at the scene, Spahr's car had been moved. There were no skid marks, nor was there other physical evidence at the scene to indicate a point of impact.

Spitler then interviewed Williams, Hensel and Spahr.[3] In speaking with Williams, he thought it odd that she could witness the accident from her position. But, he then determined that her line of sight from her rearview mirror was consistent with her statement. Hensel told Spitler that "she was between two vehicles and began to walk into the aisle and looked back for a second when the car appeared and struck her about the legs." Tr. 240. Spahr said that "there were people on the left as he glanced that way, and then he looked to the right as [Hensel] was in front of him. He applied his brakes but still made contact with [Hensel]." Tr. 243. Spahr did not mention seeing a vehicle with backup lights on. Spitler noted that two large vehicles were parked in the second and third parking spots to the right and determined that Hensel came from between them. Based on his interviews, Spitler concluded that the front right section of Spahr's car struck Hensel, and that the collision occurred close to Hensel's vehicle on the right side of the parking lot. He further prepared a crash report. It contained a diagram indicating that three cars were parked in the first three parking spaces on the right and two cars were parked in the first two parking spaces to the left (the second of which was Williams').

**ANALYSIS**

Based upon its consideration of the above testimony and the other evidence submitted by the parties, the Court enters the following conclusions of law and findings of fact pursuant to Federal Rule of Civil Procedure 52:

*Conclusions of Law*

The Court has jurisdiction over this matter under the Federal Tort Claims Act, 28 U.S.C. § 1346. This action is governed by the substantive law of Indiana, because the accident occurred

---

[3] Since Spitler did not testify as to his opinion regarding the cause of the accident, the Court need not rule on the admissibility of the same (an issue that the Court's October 4, 2016 order took under advisement).

there. *See White v. United States*, 148 F.3d. 787, 793 (7th Cir. 1998). Under Indiana law, negligence has three elements: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach." *Buchanan v. Vowell*, 926 N.E.2d 515, 520 (Ind. Ct. App. 2010).

When driving, an individual has a statutory duty to "exercise due care to avoid colliding with a pedestrian . . . giving an audible signal when necessary." Ind. Code § 9-21-8-37(1). A driver also has a common law duty "to maintain a proper lookout and to use due care to avoid a collision and to maintain his or her automobile under reasonable control." *Estate of Carter v. Szymczak*, 951 N.E.2d 1, 3 (Ind. Ct. App. 2011). "The duty to keep a lookout is imposed upon a motorist so that he may become aware of dangerous situations and conditions to enable him to take appropriate precautionary measures to avoid injury." *Cole v. Gohmann*, 727 N.E.2d 1111, 1115 (Ind. Ct. App. 2000). A motorist is not, however, required to anticipate extraordinary hazards nor to constantly expect or search for unusual dangers. *Wilkerson v. Harvey*, 814 N.E.2d 686, 691 (Ind. Ct. App. 2004).

Pedestrians must exercise due care as well. A pedestrian has a statutory duty to "yield the right-of-way to all vehicles upon the roadway." Ind. Code § 9-21-17-15. A pedestrian also has a common law duty to exercise ordinary care for her own safety and is required to avail herself of all her faculties to avoid any danger or injury. A pedestrian has no right to proceed heedlessly across a street without exercising such ordinary care. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1281 (Ind. Ct. App. 1996).

A plaintiff in a negligence action can only recover if she is at equal or lesser fault for her injuries than the defendant. Ind. Code § 34-51-2-6(a). If a plaintiff is at fault but her recovery is not barred, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault." Ind. Code § 34-51-2-5.

*Findings of Fact*

The Court concludes that Hensel was negligent and primarily at fault for the accident. While certain details of the witnesses' testimony conflict (particularly those regarding where Hensel's, Williams' and others' vehicles were parked at the time of the accident), the credible evidence all suggests that Hensel stepped out from between two large cars into the drive lane without looking.

Most importantly, the Court deems the testimony of Kristi Williams credible. She was the only witness to the accident and, as a neutral observer, had no apparent incentive to lie. Williams testified that Hensel stepped into the drive lane without looking:

> Q. Go ahead and tell the Court what you saw.
>
> A. [Hensel] pulled into her parking space and she got out of her vehicle and she started to walk. She was in a hurry because I remember thinking as I was watching in my mirror, you better slow down; it's really busy. Then she continued to walk forward, but she looked over her right shoulder, but she continued walking while she was looking. And the thought went through my head, you better watch where you're going or you could get hit. I no more finished that thought, and she got hit. That car and her collided.
>
> Q: Now, at what point in the parking lot did she start looking over her right shoulder?
>
> A: A few steps after she had gotten out of her vehicle and started walking.
>
> Q: Was she at the end of her vehicle at that point when she started looking over her right shoulder?
>
> A: It might have been close to the end of her vehicle.
>
> Q: And then how many steps did she continue walking while she was looking over her right shoulder?

A: A few steps.

Q. Out into the drive lane while she was still looking?

A: Yes.

Q: At any point in time, did you see Mrs. Hensel stop at the end of her vehicle and then look both ways before she walked out into the drive lane?

A: No, I did not.

Tr. 203-04. This testimony is consistent with most of the other evidence at trial. First, it coincides with Williams' prior statement, which she gave to Marshal Spitler shortly after the accident. Second, it is supported by Hensel's own post-accident statement to Spitler (though not her subsequent testimony at trial). Tr. 171 ("[Hensel] stated that she had just parked . . . was between two vehicles and began to walk into the aisle and looked back for a second when the car appeared and struck her about the legs."). Third, it is consistent with Spahr's testimony that he did not observe any pedestrians when he initially turned into the drive lane. Fourth, it is consistent with the uncontested evidence that Hensel made contact with the side of Spahr's car that was closest to where Hensel was parked.

In contrast, Hensel's account of events is both partisan and implausible. Initially, the Court notes that testimony at trial indicated that Hensel offered four different characterizations of events (her statement to Spitler, her diary entry, her deposition testimony and her trial testimony) that differed in material respects. Among other things, in her initial statement Hensel informed Spitler that she stepped out into the drive lane without looking. Tr. 171-72. She also testified in her deposition that she did not walk at a diagonal angle, but rather walked straight across the drive lane. Tr. 168. But even her trial testimony taken alone is not logically consistent. She testified that she exited her van and retrieved a package from the passenger's side. She then walked to the edge of her vehicle, looked left and right and began to walk diagonally toward the

8

post office. Her counsel estimates she started from a position about forty feet from the driveway entrance. She said that from her vantage point she "could see if there was somebody coming or not." Tr. 169. Nevertheless, she also asserts that Spahr somehow suddenly appeared in front of her. Tr. 170-71 ("Q: He just appeared miraculously in front of you? A: He was just all of a sudden there, yes.").

That does not make sense. The uncontested evidence is that Spahr was driving through the parking lot at a speed of less than eight miles an hour. If Hensel had walked at a diagonal angle partially facing the entrance to the parking lot as she testified, she would have been able to see Spahr approach and avoid a collision. Indeed she testified that she could have seen anybody that was coming. Spahr would not have come upon her "all of a sudden." Tr. 164. In contrast, if Hensel had looked both ways, not seen Spahr, and walked straight across the drive lane, she would have been able to cross before Spahr arrived at her position. In either case, she would not have been struck as she was.

So, the weight of the evidence (by both volume and credibility) points to the conclusion that Hensel walked out from between two cars into the drive lane while looking backwards and without first looking both ways. The only evidence to the contrary is Hensel's own statement, which is potentially biased, contradicted by her own previous statement and logically inconsistent. Since it is common sense that a reasonable pedestrian looks both ways before crossing the street, that leads to the inescapable conclusion that Hensel did not look where she was going and was therefore negligent. *See Nesvig*, 668 N.E.2d at 1281 ("a pedestrian has no right to proceed heedlessly across a street without exercising ordinary care for his own safety").

Nevertheless, Hensel can still recover if she is at equal or lesser fault than the Defendant. There is, however, little evidence that Spahr was negligent. The parties do not dispute that he

9

entered the drive lane slowly, at no more than eight miles per hour. Indeed, he could not have been traveling quickly, since he had just made two ninety-degree turns. As he turned into the drive lane, he looked to his right and had a clear view of the drive lane, but did not see any pedestrians in it. If Hensel was next to her van at that time, Spahr's view of her would have been obscured by a large cargo van. He then diverted his attention to the left for two seconds. In doing so, the Plaintiffs say Spahr was negligent. However, the Court finds Spahr's testimony credible that he was concerned that a vehicle to his left had lights on indicating that it could back up. Two seconds was a relatively brief period of time to assess that potential hazard. This is particularly true given the low speed Spahr was traveling. Once he returned his attention to his front, there is no evidence that he could have done anything other than what he did to avoid hitting Hensel. The Court accordingly concludes that Spahr did not act negligently. To the extent there is a reasonable argument to the contrary, any negligence by Spahr in briefly diverting his attention at slow speed would be far less than that of Hensel, who walked out into traffic without looking. So, Hensel is more than fifty percent at fault and her recovery is thus barred.

## CONCLUSION

The Plaintiffs have failed to present evidence that Spahr acted negligently. Further, the evidence indicates that the Plaintiffs' harm was caused by Hensel's own negligent conduct. The Court accordingly enters judgment for the United States.

SO ORDERED.

ENTERED: February 23, 2017

                                                 /s/ JON E. DEGUILIO
Judge
United States District Court